[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11063
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-00190-SPC-MRM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus


TONY WILSON, JR.,
a.k.a. Big Homie ,
a.k.a. Caine ,
a.k.a. Daddy,
a.k.a. Nova ,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 25, 2021)

Before JILL PRYOR, BRANCH and LUCK, Circuit Judges.

PER CURIAM:

Tony Wilson, Jr., appeals his life sentence, imposed after he pled guilty to drug trafficking and firearm possession charges stemming from his leadership of a drug distribution conspiracy. On appeal, he argues that his sentence is procedurally and substantively unreasonable. As to procedural unreasonableness, Wilson argues that the district court failed to weigh the 18 U.S.C. § 3553(a) factors, overemphasized the respect for the rule of law factor, and erroneously invoked the factors to justify imposing the sentence. As to substantive unreasonableness, Wilson argues that the district court abused its discretion by imposing a life sentence given that he was 31-years-old at the time of sentencing and the conspiracy did not result in anyone's death. After careful review, we reject Wilson's arguments. The district court adequately considered the § 3553(a) factors and the facts and circumstances of Wilson's case before imposing a sentence within the bounds of its discretion. We therefore affirm.

## I. BACKGROUND

As part of a 17-count indictment against 10 individuals, Wilson was charged with (1) conspiracy to distribute and possess with intent to distribute 280 grams or more of a mixture or substance containing cocaine base, one kilogram or more of a mixture containing heroin, and 400 grams or more of a mixture or substance

2

containing fentanyl; (2) distribution of a mixture and substance containing fentanyl; (3) possession of a firearm by a convicted felon; and (4) possession of a firearm during and in relation to a drug trafficking crime. He pled guilty without a plea agreement. We review the facts of Wilson's crimes as they are relevant to his appeal.[1]

Between 2013 and 2018, Wilson operated and supplied a drug trafficking organization in the Suncoast Estates area of North Fort Myers, Florida. He enlisted multiple individuals to distribute drugs from residences referred to as "trap houses," including the organization's main hub, referred to by its participants as the "Big House." Doc. 333 at 24.[2] Multiple witnesses, including two of Wilson's co-conspirators, confirmed his role as the supplier of the organization from 2013 through 2015. When the Big House's owner, one of Wilson's co-conspirators, was arrested, Wilson assured her on a call that everything was under control. On a later call, the two discussed moving the organization's operations to a neighboring house.

The conspiracy's distributors received the drugs from Wilson, readied them for retail distribution at the trap houses, and returned bulk cash to him. The dealers

---

[1] Wilson admitted to the facts recited below during his plea colloquy and when he elected not to object to the facts in the presentence report; they are unchallenged on appeal.

[2] "Doc." numbers refer to the district court's docket entries.

occasionally worked together to satisfy spikes in demand. Multiple co-conspirators admitted that, over the course of the conspiracy, the organization distributed per day at least four approximately eight-gram "cookies" of cocaine base and 200 approximately .1 gram bags of heroin and/or fentanyl in furtherance of the conspiracy, amounts which were reasonably foreseeable to Wilson given his role as the organization's supplier.

With the aid of confidential informants, law enforcement conducted multiple purchases of drugs from individuals supplied by Wilson at the Big House and the organization's other trap houses. Law enforcement also executed multiple search warrants at the Big House. One resulted in the seizure of over 330 grams of cocaine base and over 65 grams of a heroin-fentanyl mixture; another garnered over 200 grams of heroin and 15 grams of cocaine base. Wilson's co-conspirators informed authorities that those drugs were supplied by Wilson. On one occasion, a confidential informant purchased fentanyl directly from Wilson.

Evidence also demonstrated that Wilson and his co-conspirators used firearms to protect the organization. In April 2018, authorities executed a search warrant at Wilson's family residence. They discovered two pistols in the master bedroom alongside male belongings, a rifle in a second bedroom containing adult male clothing, a third pistol in a baby crib in the living room, and over $9,000 of cash hidden in adult male shoes and pants. The firearms were intended to help

4

Wilson protect the drug organization, and the cash was proceeds from the organization's drug dealing.  When the search warrant was executed, Wilson knew he was a convicted felon.  On multiple occasions, law enforcement also observed Wilson's co-conspirators with firearms connected to the organization's drug dealing.

After Wilson's indictment, he participated in a jailhouse assault designed to intimidate and punish Christopher Connor, a co-conspirator-turned-potential witness who was, at the time of the assault, cooperating with authorities.  In jail, one of Wilson's co-conspirators, Jeffrey Beard, recognized Connor and immediately alerted Wilson.  Wilson and Beard then cornered Connor by his cell, and, when Connor entered the cell, Wilson and Beard followed.  Wilson shut the door behind them and stood in front of it.  Beard declared, "[y]ou're on my paperwork," accusing Connor of assisting the government in its case against him.  Doc. 665 at 90.  Wilson seconded:  "You're definitely on the paperwork."  *Id.* Then Beard attacked Connor, dropping him to the ground with a punch to the ear before beating him further.  When Wilson and Beard left Connor's cell, Connor reported the incident to officers; he had a ruptured, bleeding eardrum and a lacerated, swollen face.

When the assault occurred, Connor was willing and able to testify against Wilson at Wilson's sentencing or in future related prosecutions.  Connor had

5

already provided information about Wilson to the government. And he had already testified against one of Wilson's co-conspirators at trial.

After the district court accepted Wilson's plea, a probation officer prepared a presentence investigation report ("PSI"). Based on the quantity of drugs the organization was selling each day and Wilson's participation in the conspiracy each day, the PSI found that he was responsible for 66.14 kilograms of cocaine base, 41.34 kilograms of heroin, and 14.99 grams of fentanyl. Using these drug quantities, the PSI calculated Wilson's base offense level as 38. The PSI then applied several enhancements, including: a two-level enhancement because Wilson's co-conspirators carried firearms during drug deals, U.S.S.G. § 2D1.1(b)(1); a two-level enhancement because Wilson used several homes in furtherance of drug trafficking, *id.* § 2D1.1(b)(12); and a two-level enhancement because Wilson obstructed justice by participating in a jailhouse assault and battery intended to intimidate a co-conspirator-turned-potential government witness, *id.* § 3C1.1. In addition, Wilson received a four-level enhancement for being a leader of a conspiracy that involved more than five participants. *See id.* § 3B1.1(a). The PSI calculated his adjusted offense level as 48. Because total offense levels are capped at 43, the PSI assigned him a total offense level of 43. U.S.S.G. ch. 5, pt.

A, cmt. 2.[3]  Tabling his career-offender status, the PSI assigned him a criminal history category of V because his criminal history score was 10.[4]  Based on his total offense level and criminal history category, the PSI calculated his guidelines range as life imprisonment.

At the sentencing hearing, the district court adopted the PSI's guidelines calculation.  Wilson urged the court to vary downward from a life sentence.  He argued that his decision to plead guilty obviated the need for a lengthy trial, the offenses comprising his criminal history occurred when he was young, and that he should be afforded another opportunity to obey the law and reunite with his family.

The district court denied Wilson's request for a below-guidelines sentence. It expressed an interest in minimizing inequitable sentencing disparities.  It also reasoned that Wilson was entitled to no downward variance for pleading guilty because his participation in the jailhouse assault, which obstructed the government's prosecution of the conspiracy, demonstrated that he had not accepted responsibility for his criminal conduct.  Finally, referring to his prior convictions, the court explained that Wilson had already been given several chances to obey the law.  Rather than reform, Wilson used his intelligence and charisma to lead a drug

---

[3] Wilson also qualified as a career offender.  But the PSI did not use the career-offender guideline to set his offense level because his offense level was greater without considering his career-offender status.  See U.S.S.G. § 4B1.1(b).

[4] If Wilson's career-offender status had been considered, his criminal history category would have been VI. See U.S.S.G. § 4B1.1(b).

distribution conspiracy that preyed on many, including co-conspirators who suffered from drug addictions and homelessness.

Adhering to the guidelines range, the district court imposed a life sentence. Specifically, Wilson was given life sentences for the conspiracy and possession of a firearm as a convicted felon charges (to run concurrently), 240 months for the fentanyl distribution charge (to run concurrently with the life sentences), and 60 months for the possession of a firearm during and in relation to drug trafficking charge (to run consecutively to the other sentences).

This is Wilson's appeal.

## II. STANDARD OF REVIEW

We review for an abuse of discretion the reasonableness of a sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Cabezas-Montano*, 949 F.3d 567, 610 (11th Cir. 2020). We review *de novo* the sufficiency of the district court's explanation of its sentencing decision under 18 U.S.C. § 3553(c)(1). *Cabezas-Montano*, 949 F.3d at 608 n.39.

## III. DISCUSSION

On appeal, Wilson argues that his sentence is procedurally and substantively unreasonable. As the party challenging the sentence, Wilson bears the burden of showing it is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). He fails to satisfy that burden.

First, Wilson argues that his sentence is procedurally unreasonable. A sentence is procedurally unreasonable if the court fails to correctly calculate the guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *United States v. Gonzalez*, 550 F.3d 1319, 1323–24 (11th Cir. 2008) (citing *Gall*, 552 U.S. at 50–51). The district court "does not need to discuss or state each factor explicitly." *Id.* at 1324. "An acknowledgement [that] the district court has considered the defendant's arguments and the § 3553(a) factors [suffices]." *Id.*

Wilson argues that his sentence is procedurally unreasonable because the district court, he says, "fail[ed] to weigh all the § 3553(a) factors," "impos[ed] [the] sentence primarily based on [Wilson's] need to respect the law, to the exclusion of substantively considering the [other] § 3553(a) factors," and erroneously reasoned that some of the § 3553(a) factors suggested Wilson should endure a harsher—rather than a more lenient—sentence. Appellant's Br. at 21. The first two contentions are belied by the record; the third reflects a misunderstanding of § 3553(a).

In fashioning the sentence, the district court explained that its sentencing decision was based on the § 3553(a) factors and, in its view, no greater than necessary to further the statutory purposes of sentencing. In addition to

9

considering the § 3553(a) factors, the district court thoroughly described and considered the facts and circumstances of Wilson's case, including Wilson's upbringing, mental health, intelligence, and charisma; his manipulation of co-conspirators who were addicted to drugs and homeless; his criminal history; the facts concerning the conspiracy elicited during the trial of one of his co-conspirators; the devastation visited upon Suncoast Estates by drug dealing; the efficacy of Wilson's organization in distributing drugs in that community; the organization's repeated evasion of law enforcement; and Wilson's participation in the jailhouse assault of a potential witness. The court also considered the presentence report, Wilson's allocution, sentencing-related documents he filed with the court, and his sentencing arguments. We therefore disagree with Wilson that the district court did not adequately consider the § 3553(a) factors or overrelied on the respect for the rule of law factor when fashioning the sentence.

Nor are we persuaded by Wilson's argument that the district court violated § 3553(a)'s mandate that sentences be "sufficient, but not greater than necessary" to further the purposes of sentencing because the district court stated that the § 3553(a) factors could cut in favor of a harsher or less harsh sentence. 18 U.S.C. § 3553(a). According to Wilson, because the district court was required to impose the most lenient sentence that satisfied the objectives of sentencing, it was

10

improper for the court to invoke the § 3553(a) factors to justify imposing a life sentence.

This argument misunderstands § 3553(a). Sentences must be "sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." *Id.* Those purposes are to reflect the seriousness of the offense; promote respect for the rule of law; provide for just punishment; adequately deter criminal conduct; protect the public; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2)(A)–(D). In fashioning a sentence, the district court must consider not only those purposes but also, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to impose similar sentences upon similarly situated defendants. *Id.* § 3553(a)(1), (6). The district court's observation that these factors can support not only a more lenient sentence but also a harsher one was simply an explanation that the factors are consulted to guide the district court toward a sentence that is sufficient but not greater than necessary. Far from suggesting error, the district court's explanation that the factors may cut in favor of a longer term of imprisonment is consistent with § 3553(a)'s statutory mandate and is, indeed, a truism of § 3553(a). For § 3553(a) requires the district court to locate a sentence "*sufficient*, but not greater than necessary" to further the statutory goals of sentencing, a task requiring it to

11

consider facts and circumstances of the offense that cut in favor of a harsher sentence. *Id.* § 3553(a) (emphasis added). We conclude therefore that Wilson fails to demonstrate that his sentence is procedurally unreasonable.

Second, Wilson argues that his sentence is substantively unreasonable. When reviewing a sentence for substantive reasonableness, we examine the totality of the circumstances, including "whether the statutory factors in § 3553(a) support the sentence in question." *Gonzalez*, 550 F.3d at 1324. "We will not second guess the weight (or lack thereof) that [a district court] accorded to a given factor . . . as long as the sentence ultimately imposed is reasonable in light of *all* the circumstances presented." *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (alterations adopted) (internal quotation marks omitted). We may vacate a sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted). We may not set aside a sentence "merely because we would have decided that another one is more appropriate." *Id.* at 1191.

Wilson contends that his sentence is substantively unreasonable because a life sentence for a 31-year-old when no deaths resulted from the offense falls

12

outside the range of reasonable sentences.  He marshals statistics compiled by the

United States Sentencing Commission to demonstrate the rarity of life sentences

and the even greater rarity of life sentences for crimes that did not result in death.

*See* U.S. Sent'g Comm'n, Fiscal Year 2019 Overview of Federal Criminal Cases 9

(2020) (reporting that 133 federal offenders were sentenced to life imprisonment);

*see also* U.S. Sent'g Comm'n, Life Sentences in the Federal System 4 (2015)

(explaining that, in fiscal year 2013, life sentences were most common in drug

trafficking, firearms, murder, and extortion and racketeering cases and that, "[i]n

virtually all of [the cases in which life sentences were imposed], one or more

persons died as a result of the criminal enterprise.").

We do not doubt that the imposition of life sentences for crimes not resulting

in death are relatively rare.  Even so, we cannot say this fact alone renders

Wilson's within-the-guidelines sentence substantively unreasonable.  *See*

*Gonazalez*, 550 F.3d at 1324 ("We ordinarily expect a sentence within the

[g]uidelines range to be reasonable . . . .").  As we have explained, the district court

adequately applied the § 3553(a) factors to the facts and circumstances of Wilson's

case.  *See* 18 U.S.C. § 3553(a)(1)–(2), (6); Doc. 665 at 144–49 (basing the

sentence on the nature of Wilson's crime, his age and background, his apparent

disregard for the rule of law, his recidivism, the negative consequences of Wilson's

crimes on the Suncoast Estates community, and the sentences imposed upon his

13

co-conspirators).  The weight to be accorded any given § 3553(a) factor is committed to the sound discretion of the district court.  *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).  Regardless of whether we would have imposed the same sentence, we cannot say with a definite and firm conviction that the district court's sentence was unreasonable because Wilson was 31-years-old and his crimes did not result in death.  We must therefore reject Wilson's argument that the district court abused its discretion in determining the sentence.

**AFFIRMED.**